The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

UNITED STATES OF AMERICA,

Plaintiff,                    NO.    CR 09-5887 RBL

11        v.

12    DOUGLAS LANE PROBSTFELD,                    DEFENDANT'S SENTENCING
                                                   MEMORANDUM
13

14                                  Defendant.

15              This matter is scheduled to come before the court on Friday, September 10,

16    2010 for sentencing.  Mr. Probstfeld previously pled guilty to Count 1 of the Indictment.  At

17    sentencing, the defense intends to ask the court to sentence Mr. Probstfeld to a probationary

18    sentence with a period of electronic home confinement and a 5-year period of supervised

19    release.

20

21              First, the defense contests that the factors listed by the USPO in paragraph 2,

22    page 6 of the Sentencing Recommendation (hereafter "Recommendation") should be

23    considered as "aggravating".  Second, the defense asserts that the factors listed in the

24    Recommendation as "mitigating" carry greater weight, on balance, than the factors listed as

25    "aggravating" and support the sentence proposed by the defense.  Third, the mitigating

26    factors stated in the Recommendation, viewed in conjunction with other mitigating factors

Page    1 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

stated below, support the reasonableness of sentencing Mr. Probstfeld to a term of probation and electronic home confinement.

The defense's proposed sentence is appropriate for the following reasons:

1.   A sentence below the recommended 24 months meets the purposes of sentencing based upon a number of factors that should be considered under 18 USC §3553(a) including, but not limited to, the following:

a.   Mr. Probstfeld's Conduct Does Not Involve Any Peer to Peer Trading, But Merely Downloading And Storing The Offending Images;

b.   Mr. Probstfeld's Age (60) And Total Lack Of Criminal History Makes Him Unlikely To Re-Offend;

c.   The Evaluations Conducted By Dr. McGovern And Dr. Senn, Along With Research Studies By Dr. Richard Wollert Show That Mr. Probstfeld Is Unlikely To Recidivate;

d.   Mr. Probstfeld Has Achieved Substantial Post Offense Rehabilitation;

e.   The Sentence Proposed Would Assist In Mr. Probstfeld's Continued Rehabilitation And A Prison Sentence Would Undermine Mr. Probstfeld's Rehabilitation;

f.   Mr. Probstfeld Has Been, And Is, The Primary Care-Provider For His 92-Year Old Mother;

g.   Mr. Probstfeld Has Exhibited Exceptional Good Behavior During The Period Post Incident and Pre-Sentencing; and

h.   The Guidelines In USSG Are Not Based Upon The Traditional Empirical Research Conducted by the United States Sentencing Commission.

The defense intends to call the following individuals to testify at the sentencing in support of Mr. Probstfeld:

a.   Ms. Naomi June Cole, Mr. Probstfeld's mother;

Page   2 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

b.    Ryan Probstfeld, Mr. Probstfeld's son;

c.    Dr. Kevin McGovern;

d.    Dr. Tom Brewer; and

e.    Dr. Richard Wollert.

In fashioning a sentence *post Booker*, it is paramount for the court to fashion an appropriate sentence consistent with the Congressional directive that the court "shall impose a sentence sufficient, ***but not greater than necessary***, to comply with [the purposes of sentencing]" (emphasis added). 18 USC §3553(a); *Kimbrough v. United States*, 552 US --, 128 S Ct 558, 169 LEd2d 481 (2007)(district court "may determine...that in the particular case a within Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing"; here district court's below guideline sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals' of sentencing"); *United States v. Carty*, 520 F 3d 984 (9th Cir 2008)(*en banc*)(this principle is the "overarching statutory charge").

"'One theme' runs through the Supreme Court's recent sentencing decisions: [*United States v. Booker* [543 US 220,125 S Ct 738, 160 L Ed 621 (2005),] empowered district courts, not appellate courts .... [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing...." *United States v. Vonner*, 516 F 3d 382, 392 (6th Cir 2008)(*en banc*)(Sutton, J.).  *United States v. Whitehead*, 532 F 3d 991, 993 (9th Cir 2008). It is now well-settled that a trial court's imposition of an individualized sentence outside the advisory guidelines range is ***not*** presumed to be unreasonable by appellate courts. *Id., Compare United States v. Amezcua-Vasquez*, 567 F 3d 1050, 1054-1055 (court stated that

Page    3 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   federal courts must still review for reasonableness and found it was ***unreasonable*** to ***not***

2   impose a lower sentence than the guideline sentence in an illegal re-entry case because the

3   guideline sentence was not "substantively reasonable").  In *Whitehead*, the 9th Circuit upheld

4   the imposition of a probation sentence where the advisory guideline range was 41-51 months,

5   which is not much different than the range set forth in the *Draft* PSR in this case (57-71).

6   *See Whitehead, supra,* at 994.

7

8          Finally, although it is appropriate to determine the applicable advisory

9   guideline range, the court is not required to give that range any special weight in lieu of all of

10  the other factors listed in 18 U.S.C. 3553(a).  *See Kimbrough,* 128 S Ct at 570; *Gall,* 128 S Ct

11  at 594, 596-597.  In *United States v. Carty,* 520 F 3d 984 (9th Cir 2008)(*en banc*), the court

12  stated that the district court, after determining the guideline range, consider the §3553 factors

13  including "the nature and circumstances of the offense and the history and characteristics of

14  the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds

15  of sentence and the sentencing range established in the Guidelines; any pertinent policy

16  statement issued by the Sentencing Commission; the need to avoid unwarranted sentence

17  disparities among defendants with similar records who have been found guilty of similar

18  conduct; and the need to provide restitution to any victims." 18 USC § 3553(a)(1)-(7); *Gall,*

19  128 S Ct at 596-597 n. 6. *Carty,* 520 F 3d at 991.  Further, the court "may not presume that

20  the Guidelines range is reasonable" and "must make an individualized determination"

21  regarding the appropriate sentence. *Id.*

22

23         Other circuits have also recognized these principles.   *United States v.*

24  *McBride,* 434 F 3d 470 (6th Cir 2006); *United States v. Sachenmaier,* 491 F 3d 680 (7th Cir

25  2007) (post-*Rita,* 2007); *United States v. Pickett,* 475 F 3d 1347 (DC Cir 2007)(to presume

26

Page    4 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

1   that a Guidelines sentence is the correct sentence would be an unwarranted move in the

2   direction of returning to the pre-*Booker* regime); *United States v. Winters*, 416 F 3d 856, 860-

3   61 (8th Cir 2005).

4                    1.        The USPO Sentencing Recommendation

5

6           The USPO Sentencing Recommendation is 24-months based upon a number

7   of factors, including, but not limited to: a) Mr. Probstfeld submitted to, and provided to the

8   government, a "quite positive" psycho-sexual evaluation;[1] b) the evaluation verified that Mr.

9   Probstfeld had not engaged in any actual sexual contact with any child; c) Mr. Probstfeld is a

10  low risk to re-offend; and d) Mr. Probstfeld is a good candidate for treatment.   The

11  Recommendation went on to note that the "average sentence" for defendants with this crime

12  of conviction is 24-months and Mr. Probstfeld has similar characteristics as the "average

13  defendant" (no hands on contact with children, low risk for re-offending and good candidate

14  for treatment).

15

16          The Recommendation then listed two factors that the USPO writer believed

17  aggravated Mr. Probstfeld "above the average similarly situated defendant": Mr. Probstfeld

18  was identified in a previous child pornography investigation and expressed a "remarkably

19  callous view" towards victims of child pornography at the time of his arrest.   The

20  Recommendation also noted two factors that mitigated Mr. Probstfeld below the average

21  similarly situated defendant:  Mr. Probstfeld's age is greater than average and associated with

22  lower recidivism rate, and he did not engage in any sharing or distribution.    The

23  Recommendation then concluded that the two aggravating factors when weighed against the

24

25  _____

26  [1] As will be emphasized below, Mr. Probstfeld actually submitted to two independent evaluations, both of
    which had positive conclusions.

Page   5 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1  two mitigating factors placed Mr. Probstfeld roughly in line with the average defendant and,

2  thus, the 24-month period was appropriate.

3          The defense contends that the alleged aggravating evidence, the stated

4  mitigating evidence and some additional mitigating evidence, when viewed as a whole, place

5  Mr. Probstfeld far below the average defendant in this type of case, and that the defense's

6  proposed sentence is not unreasonable.

7          First, greater consideration should be given to the fact that Mr. Probstfeld did

8  not share or distribute these images with any other person. Although the defense does not

9  not share or distribute these images with any other person. Although the defense does not

10 have access to the USPO statistics, many cases discuss the fact that files were shared. In

11 addition, the victim's materials in this case clearly state that the more the images are

12 distributed, the greater the harm to the victims. Therefore, the fact that Mr. Probstfeld did

13 not share these images in any manner is a strong mitigation factor.

14         Also, his age is a significant factor regarding any potential for recidivism. The

15 fact that he is 64 ½ years old strongly mitigates against any chance of recidivism. It is

16 without question that defendants "over the age of forty...exhibit markedly lower rates of

17 recidivism in comparison to younger defendants". *See Measuring Recidivism: The Criminal*

18 *History Computation Of The Federal Sentencing Guidelines,* at 12, 28 (2004)

19 *www.ussc.gov/publicat/Recidivism_General.pdf* ("Recidivism rates decline relatively

20 consistently as age increases," from 35.5% under age 21 to 9.5% over 50). The report points

21 out that "under the primary recidivism measure, offenders in CHC I have a substantially

22 lower risk of recidivating within two years (13.8%) than do offenders in CHC VI (55.2%)".

23 *Id* at 6. Most importantly, individuals given a sentence of supervision and alternative

24 sanctions are less likely to re-offend than those given a straight prison sentence (25.6%

25

26

Page   6 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

1   versus 16.7%).[2]

2          The defense asserts that there are other mitigating factors that support a

3   sentence below the 24-month sentence for the average defendant.   Unlike other defendants,

4   Mr. Probstfeld submitted to two independent psychosexual evaluations, and each doctor

5   independently arrived at the same conclusions regarding Mr. Probstfeld's low potential for

6   recidivism.

7          Dr. Kevin B. McGovern initially saw Mr. Probstfeld prior to his indictment,

8   and conducted follow-up testing and the completion of the assessment during the spring.  Dr.

9   McGovern has over 30 years experience specializing in the evaluation and treatment of sex

10  offenders, including those involved with child pornography.  He has been certified by the

11  State of Washington in that sub-specialty of psychology since certification was initially

12  required in 1994.   Over the years he has evaluated and treated thousands of offenders.  In

13  addition to his own testing, Dr. McGovern reviewed Dr. Brewer's June 18, 2010 progress

14  report confirming that Mr. Probstfeld "has been a very engaged and active treatment

15  participant." McGovern Report at 2.

16         Dr. McGovern found the following significant:

17  (a)    Lack of history of sexual contact with minors as confirmed by the
           results of the polygraph evaluation;

18

19  (b)    The Abel Assessment for sexual interest showed Mr. Probstfeld's
           primary sexual interests are adult females and adolescent females,
20         which is considered normative for the adult male population;

21

22  (c)    Psychological testing did not reveal any psychological problems or
           personality deficiencies that would interfere with Mr. Probstfeld's
23         ability to successfully participate in counseling or complete probation;

24

25  ──────────────

26  [2] In addition, with regards to the chance of recidivating, Dr. Wollert will testify that Mr. Probstfeld is very
    unlikely to recidivate, which will, in turn, substantiate the conclusions of Dr. McGovern and Dr. Senn *See
    infra.*

Page   7 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

(d)   Psychological testing did not reveal any pedophilic interests or aberrant behavior;

(e)   Clinical observations confirmed Mr. Probstfeld has the intellectual capacity and motivation to successfully participate in and complete counseling and probation;

(f)   Lack of criminal history;

(g)   Mr. Probstfeld expressed appropriate remorse and empathy for his victims;

(h)   Risk management protocols indicate Mr. Probstfeld's predicted rate of future re-offenses is "close to zero," particularly if he is allowed to complete the counseling program with Dr. Brewer;

(i)   Over the course of counseling positive transitions in Mr. Probstfeld's perceptions regarding the illicit use of child pornography underline the beneficial impact of treatment and reinforce the unlikelihood that he will re-offend.

Mr. Probstfeld also obtained a psychosexual evaluation from Dr.  Scott A. Senn.  Dr. Senn is certified by the State of Washington and has over 20 years experience evaluating and treating sex offenders in his clinical and forensic practice.  As a result of his assessment, Dr. Senn found the following significant:

(a)   Psychological testing results indicate superior intelligence with pro-social as opposed to anti-social tendencies. Mr. Probstfeld profiles as a rather traditional, independent individual, who does not endorse illegal or immoral behaviors, and does not suffer from any mental disorder that would interfere with his ability to successfully participate in counseling and conform his behavior to the expectations of the court;

(b)   The Abel Assessment for sexual interest showed Mr. Probstfeld's primary sexual interests are adult females and adolescent females, and, as Dr. Senn notes, some sexual interest in adolescent females is considered normative for the adult male population;

(c)   Risk assessment testing uniformly predicted Mr. Probstfeld to be a low risk to re-offend;

Page   8 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1

2

   (d)   Polygraph examination testing indicated Mr. Probstfeld truthfully
         reported that he has never engaged in sexual misconduct of a
         physical nature with a minor;

3

   (e)   Lack of prior criminal history;

4

5

   (f)   On-going successful participation in counseling with Dr. Brewer is
         predictive of an ability to rehabilitate and successfully participate in
         court-ordered probation.

6

7

         Dr. Senn concludes that Mr. Probstfeld appears to be entirely appropriate for

8

community-based services. He goes on to note there is nothing in his behavioral profile that

9

suggests imprisonment is necessary as a corrective measure, but that interruption of his

10

current treatment program would be detrimental to his rehabilitation.  He is seen as an ideal

11

candidate for out-patient treatment and community supervision because he is a low-risk to re-

12

offend as long as he remains in counseling, especially since he has demonstrated a relatively

13

high degree of amenability as shown by the progress he has made in counseling to date with

14

Dr. Brewer.  Finally, he has an excellent history, a pro-social behavioral profile, and is fully

15

capable of supporting himself in the community if probation is ordered by the court.

16

17

         Richard Wollert is also a Washington State certified sex offender treatment

18

provider.  Over the last 30 years, he estimates he has personally evaluated approximately

19

1000 sex offenders and treated approximately 3000.  From 1999 to 2009, he provided

20

treatment services to federal Internet child pornography offenders in connection with a

21

contract he held with Federal Probation Services.  He has published routinely in peer-

22

reviewed journals.  His most recent study is entitled *Federal Internet Child Pornography*

23

*Offenders (CPOs) Do Not Have Florid Offense Histories and Are Unlikely to Recidivate.*  A

24

copy is attached to this memorandum and is incorporated by this reference.  This study was

25

26

Page   9 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    solicited and has been approved for publication by Barbara Schwartz, Editor of *The Sex*

2    *Offender: Volume 7*, and is expected to be published sometime this year.

3              At the sentencing hearing, Dr. Wollert will explain why his study was

4    commissioned, how it was conducted, and how the data supports the conclusion reflected in

5    the title.   Essentially, he will explain that the limited previous research done on child

6    pornography offenders generally is of questionable validity and provides inadequate support

7    for sentencing consequences that have escalated over the last 20 years in this category of

8    cases as a result of a series of congressional mandates.

9

10             His study represents the only controlled follow-up study ever done on

11   recidivism involving federal Internet child pornography defendants.  It concludes that child

12   pornography offenders are a unique population very unlikely to recidivate.   This is

13   particularly true of those who are older.  They are largely a non-criminal population, easy to

14   treat, typically mortified by their behavior, and predictably able to conform their behavior on

15   community placement.  As a corollary, Dr. Wollert will explain there is no valid empirical

16   basis justifying imposition of prison sentences in possession cases, at least from the

17   standpoint of risk of re-offense, or a need for such punitive deterrence.

18

19             As emphasized in the evaluations, Mr. Probstfeld also submitted a passed

20   polygraph examination to the government regarding the fact that he had not had sexual

21   contact with any child, which cross corroborates the conclusions of Dr. McGovern and Dr.

22   Senn.

23             As reflected in the reports referenced above, Mr. Probstfeld has been treating

24   with Dr. Tom Brewer.  Dr. Brewer is a Washington State certified sex offender evaluator and

25   treatment provider, and has also earned a national certification for treatment of sexual

26

Page    10 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    addictions.   He has evaluated and counseled hundreds of sex offenders, including those

2    charged with the use and possession of child pornography.   Mr. Probstfeld began treating

3    with Dr. Brewer on August 25, 2009, seven months prior to his indictment and arraignment,

4    and has been treating with Dr. Brewer up through the present.

5           The Ninth Circuit has recognized that a lengthy term of imprisonment is not

6    necessarily warranted if it would **_not_** aid, **_or it would impede_**, defendant's rehabilitation. *See*

7    *United States v. Autery*, 555 F 3d 864 (9th Cir 2009)(where guidelines were set at 41-51

8    months, court's sua sponte variance to probation not unreasonable, in part, because of district

9    court's determination that incarceration "would undermine" defendant's rehabilitation and

10   that probation with treatment was a more appropriate sentence than incarceration) *United*

11   *States v. Thompson*, 315 F 3d 1071 (9th Cir 2002)(Berzon, J. concurring)("I further conclude

12   that sending defendant to prison for a lengthy period of time would not aid in his

13   rehabilitation and might actually hinder the progress he made in counseling. *See* 18 USC. §

14   3553(a)(2)(D)").

15          Dr. Brewer indicates that Mr. Probstfeld represents a classic case supporting

16   the need for, and benefits that may be realized from, modern counseling intervention.   Dr.

17   Brewer also indicates that Mr. Probstfeld initially expressed confusion in counseling.   While

18   Mr. Probstfeld sensed that viewing child pornography was wrong in a moral sense, he had

19   difficulty intellectualizing how it could be illegal if it was readily available on the Internet.

20   Further, as a man with no prior criminal record, he had difficulty comprehending how

21   viewing images in the privacy of his own home could have devastating legal consequences,

22   especially when he never shared, discussed, or even mentioned his activities, much less any

23   images, with anyone else.

Page   11 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

At the hearing, Dr. Brewer will testify that initial denial in the sex offender population generally is common, and breakdown of denial is one of the primary purposes of counseling.   This goal has been realized in this case, as Mr. Probstfeld now fully comprehends the wrongfulness of his actions, "and has a clearer understanding of the consequence of his actions, both on the victims of child pornography and on society as a whole." Brewer at 2.

Dr. Brewer sees Mr. Probstfeld as a truly empathic and sensitive individual who now realizes that he had developed habits contrary to *his* values and contributed to the harm of the victims in this case.  He completed a workbook on sexually compulsive behavior creating a variety of concrete interventions to avert re-offense, examined the factors that aggravated his acting-out, including his social isolation and difficulty with sustained intimate relationships, reviewed case studies and victim impact statements, expressed sincere and appropriate remorse for his victims, and has fully accepted responsibility for his crime.

Most significant of all of the factors to consider in crafting an individualized sentence for Mr. Probstfeld is his post offense rehabilitation.   Recently, the District of Oregon has published a policy supporting giving credit to individuals for post-offense rehabilitation, "An orientation to punishment is tied to a relatively dim view of man. Men are visualized as possessing a corruptible nature that threatens the stability of society. Rehabilitation is based on the assumption that all men are susceptible to change for the better - that regardless of what has gone before, all persons can eventually be made useful members of society".  Klonoski and Mendelsohn (1970) at page 9-10 as quoted at page iv of The District of Oregon Reentry Court manual. Mr. Probstfeld epitomizes this credo.

/////

Page    12 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    In *United States v. Green*, 152 F 3d 1202, 1206  (9th Cir 1998), the court

2    concluded that both post-offense and post sentencing rehabilitative efforts could be a basis

3    for downward departure in a 4,000 plant marijuana case.  The *Green* court determined that it

4    was not an abuse of discretion or unreasonable to depart downward 11 levels and re-sentence

5    defendant to 30 days.  Two relatively recent cases support the legal premise that strong

6    consideration of post offense rehabilitation can lead to a sentence substantially below the

7    advisory guidelines range.  *See United States v. Cervantes,* (D Or Dec. 11, 2007, No. 04-457

8    (RE))(in case of distribution of methamphetamine where guidelines range was 87-108

9    months, court sentenced the defendant to time served (4 months) and supervised release for 4

10   years on condition of one year house arrest with work release in part because of post-offense

11   rehabilitation); *United States v. Campbell*, 05-117 KI (D Or 2007)(Court imposed a

12   downward adjustment from 57 months to probation with 6 months home confinement even

13   where defendant was in Criminal History Category VI, in part, due to post offense

14   rehabilitation); *See also United States v. McFarlin*, 535 F 3d 808 (8th Cir 2008)(where

15   advisory guideline range is 10 years, the district court's sentence of probation and home

16   detention not unreasonable, in part, because of post-offense rehabilitation recognizing that a

17   defendant's post-arrest rehabilitation "is  relevant in evaluating the §3553(a) factors.")

18   Moreover, in *Gall*, the Supreme Court rejected the Eighth Circuit's conclusion that probation

19   "lies outside the range of choice dictated by the facts of this case" because "§ 3553(a)(3)

20   ["kinds of sentences available"] directs the judge to consider sentences other than

21   imprisonment." *Gall, supra*, 127 S Ct at 602 & n.11.

22       Although not binding on a court in the Western District of Washington, in

23   *United States v. Hawkins*, 380 F Supp 2d 143 (EDNY 2005), *affirmed*, 228 Fed Appx 107

Page    13 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

(2d Cir 2007), the court engaged in an in-depth analysis of the concept of rehabilitation.

Judge Weinstein summarized by describing rehabilitation as "turning a bad life into a decent,

honorable, law-abiding life" or when "a relatively decent person falls into bad conduct, but

immediately and permanently repents". *Id.* at 159.  The court went on to state that "[S]ince

*Booker,* the Guidelines are no longer a straightjacket binding courts to artificially created and

cruel paradoxes of sentencing, by insisting not only on rehabilitation, but on extraordinary

rehabilitation." *Id* at 161.

The court emphasized that extraordinary rehabilitation is not required, as

people may not make all strides forward when attempting to rectify their conduct:

> [I]nstant and full rehabilitation may not be required to support
> a finding of extraordinary rehabilitation. A sudden insight and
> change of character, an epiphany of biblical character, is not
> essential or even common. *See, e.g., United States v. Kane,* 88
> F Supp 2d 408, 413 (E D Pa 2000 ("The court is not so naive as
> to assume that the defendant will be able to renounce twenty-
> five years of destructive behavior easily...."). On the journey
> to rehabilitation-or, more aptly, the clawing up from the pit of
> criminality-there may be digressions and slippages with
> ultimate success. *See id.* at 409, 411.

*Id* at 161.

Based upon the results of polygraph, plethysmograph, and psychological

testing, Dr. Brewer concludes Mr. Probstfeld is not pedophilic, that he is motivated,

amenable and responsive to treatment, that additional corrective counseling will further

mitigate his risk to re-offend, and that he represents a good probationary candidate.  Dr.

Brewer will confirm that interruption in the course of counseling would be detrimental to the

progress that has been achieved to date, and that the community interest in minimizing the

risk of re-offense would be furthered by allowing Mr. Probstfeld to complete his current

treatment regime.

Page    14 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    Mr. Probstfeld has met every definition of extraordinary rehabilitation.  Prior

2    to the search of his home and the seizure of evidence, he had been involved in the possession

3    and viewing of child pornography.  He isolated himself by living in private and hiding his

4    addiction from view.  However, since the seizure, he has engaged in treatment and also

5    submitted to two psycho-sexual evaluations, all of which show his great progress in

6    overcoming his addiction, accepting the wrongfulness of his behavior, creating sympathy for

7    the victims of this crime and abstaining from any unlawful behavior.

8

9    Mr. Probtsfeld's sincere and diligent efforts to address the underlying issues in

10   a positive and productive manner deserve weighty recognition, and a finding of post-incident

11   rehabilitation that gives further justification for a punishment of electronic home confinement

12   and an applicable term of supervised release.

13   Mr. Probstfeld is also the primary assistant for his 92-year old mother, Naomi

14   June Cole, and has been since he sold his home outside of Olympia and moved to Clark

15   County to be close to his mother.  The Ninth Circuit recognizes that support in the

16   community and "good works" were valid factors for imposing a sentence below the guideline

17   range.  *See United States v. Jones*, 158 F 3d 492, 500-501 (9th Cir 1998)(affirming downward

18   departure based in part on good deeds) *citing United States v. Rioux*, 97 F 3d 648, 663 (2d

19   Cir 1996)(affirmed downward departure based upon defendant's medical condition and good

20   deeds).

21   In this case, the Pre-sentence writer contacted Ms. Cole, and she told him the

22   following:  "Without him to take care of me, I would have to go to a nursing home.  That

23   would be the end of the world as far as I'm concerned."  Ms. Cole insists on being at her

24

25

26

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   son's sentencing and will travel to Tacoma to address the court.  Her letter to the court, along

2   with other letters of support, will be sent to the court under separate cover.

3          Finally, as to additional mitigating factors, Mr. Probstfeld has been exemplary

4   was in regular contact with federal agents and the United States Attorney's Office both

5   individually and through his attorneys soon after the execution of the search warrant.  He was

6   not under any court ordered supervision during that 5 plus month period of time, but there is

7   no indication that he violated any law or any rule that would later become a condition of his

8   release.  After his indictment, he was placed on release with USPS and has been exemplary

9   in his compliance since that time.

10

11          As to the asserted aggravating factors, the two stated in the Sentence

12   Recommendation should not weigh against a sentence below the stated 24-month average

13   sentence.

14          First, as to the prior download in 2006, those images are part and parcel of the

15   conduct to which Mr. Probstfeld entered a plea of guilty in this case.  Although such a factor

16   might be considered aggravating if Mr. Probstfeld had actually known that he had been

17   mentioned in the reports and subsequently continued to engage in the conduct despite

18   "dodging a bullet", he was never approached or questioned as part of that investigation.

19   Therefore, it is confusing why an additional download would be cause to treat him more

20   harshly than another average collector of images who would likely have more than one

21   download.

22

23          Second, Mr. Probstfeld did not exhibit a callous disregard for the victims, and

24   to the extent his one statement taken during a lengthy conversation with agents during the

25

26

Page   16 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    execution of the warrants and seizure of the items may be considered insensitive, he has

2    clearly addressed that issue in treatment.  Dr. McGovern reports that:

3
>    Since his arrest, he has learned many valuable lessons
4    regarding the illegal industry of child pornography.  He now
>    recognizes that viewing child pornography promotes the sexual
5    abuse of children.

6            McGovern Report at p 6.

7            Also, his primary treatment provider, Dr. Brewer, recognizes that Mr.

8    Probstfeld has made great strides in understanding how his actions harmed those children

9    pictured in the images he downloaded and viewed:

10
>    We have discussed the impact on victim [sic], read case studies
11   and victim statements and, by his request, examined his ability
>    to understand the harm caused by his actions.  He appears to be
12   a truly empathetic and sensitive individual who views himself
>    as someone who developed habits that ran counter to his
13   values, and subsequently contributed to the harm of others.

14           Brewer Report at p 2.

15           From these reports, it is clear that despite his lack of awareness regarding the

16   potential harmful nature of his actions at the time of his arrest, he has worked in treatment at

17   his own initiative to address the issue.  By actively reading the statements of victims and case

18

19   studies regarding how individuals are harmed by the child pornography industry, he has an

20   empathetic and great appreciation for those the victims harmed by child pornography.

21           This goal, recognizing not only the wrongfulness of the conduct, but also

22   recognition of how others could be harmed, is one of the major goals of treatment.  By

23   addressing the issue early and head on, Mr. Probstfeld has taken the best step toward a strong

24
     and sincere acceptance of responsibility for his actions.  Therefore, the defense contends that,
25
     rather than being a factor that would aggravate him above the average defendant, the work he
26

Page   17 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

has done in treatment towards understanding and accepting the wrongfulness of his actions should mitigate a sentence below the average.

Mr. Probstfeld has also exhibited exemplary compliance with the terms and conditions of his release since his arraignment. It is important to note that, through counsel, Mr. Probstfeld has been working with the United States Attorney's office since October of 2009.

The court should certainly consider Mr. Probstfeld's exemplary behavior during the more than one year that he has been out of custody since the execution of the warrant and seizure of his computers as another factor under 18 USC §3553(a) that justifies the proposed sentence.

In *United States v. Munoz-Nava,* 524 F 3d 1137, 1147-1149 (10th Cir 2008), the district court, despite a guideline range of 46-57 months, imposed a sentence of one year and day in prison and one year home detention. The court found that sentence imposed was reasonable because, in part, of defendant's exemplary behavior while on a year-and-a-half pretrial release, and that such exemplary behavior weighed in favor of a finding that the defendant was unlikely to reoffend. *Id.* at 1149. In *United States v. Baker,* 502 F 3d 465 (6th Cir 2007), the court rejected a guideline range of 27-33 months and imposed a sentence of probation with one year house arrest in part because the defendant had behaved "exceedingly well" while under supervision of pretrial services. In this case, Magistrate Creatura released Mr. Probstfeld to United States Pre-trial Services on January 12, 2010. Since that time, he has had a stellar record on United States Pretrial Release, and ***has had no violations of any imposed conditions, much less any law violations,*** during the time he has been supervised.

Page    18 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    In addition to all of the factors stated above, the defense asserts that the

2    Guidelines set forth in USSG § 2G2.2 are not based on the United States Sentencing

3    Guidelines traditional model of using an empirical approach based on data. The defense

4    acknowledges that under the plea agreement, the defense stipulated to the existence of BOL

5    (18) and the fact that the enhancements listed in the plea agreement and in the *Draft* PSR are

6    correct under a literal reading of USSG § 2G2.2. However, the court is free to reject those

7    stipulations and based upon the argument below, should reject them. In addition, the defense

8    

9    urges the court to not base any sentence on the BOL contained in § 2G2.2, and the specified

10   enhancements, for the reasons set forth below.

11   This argument is both an argument that the true guidelines for this offense are

12   not reflected in § 2G2.2, and that, even if the court rejects that assertion, consideration under

13   18 USC 3553(a) allows the court to use the only Base Offense Level that has been completed

14   through the empirical model (Base offense level of 10, plus 2 based on the young age of the

15   children, and minus 2 for acceptance of responsibility), for a final level of 10. *See* USSG §

16   2G2.4 (1991); Amendment 372, USSG App. C.

17   

18   In criminal history Category I, level 10 produces a range of 6-12 months

19   without consideration of any other reasons for a downward variance such as the positive

20   psychosexual evaluations, the fact that Mr. Probstfeld has been in treatment for over a year

21   and the other reasons explained above and, thus, supports a probation sentence in this case.

22   The Supreme Court has made it clear that a sentencing court is free to

23   consider "whether the Guidelines sentence should not apply, perhaps because (as the

24   Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the

25   Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence

26   

Page    19 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants

2   a different sentence regardless." *Rita v. United States,* 551 US 338, 351, 127 S Ct 2456

3   (2007)(citations omitted); *see also Gall v. United States,* 552 US 38, 46-47, 128 S Ct 586

4   (2007)(reasonableness of a sentence determined by individualized application of statutory

5   sentencing factors). Under *Gall,* a court is no longer required to find extraordinary

6   circumstances to justify a sentence outside the Guidelines range. *Gall,* 128 S Ct at 595.

7

8   In this instance, the guideline governing possession of child pornography, USSG §2G2.2,

9   does not properly reflect §3553(a) considerations, and because the features of the instant case

10  warrant a lower sentence.

11          In *Kimbrough v. United States,* the Court explained that the Sentencing

12  Commission's institutional strengths give it a "capacity courts lack" insofar as it can " 'base

13  its determinations on empirical data and national experience, guided by a professional staff

14  with appropriate expertise.'" *Kimbrough,* 552 US at 109 (quotation omitted).  However, there

15  are some guidelines, such as §2G2.2, that do not exemplify the Commission's "exercise of its

16  characteristic institutional role." *Kimbrough,* 552 US at 108-09.

17

18          Congressional mandates, rather than specific changes presented and

19  recommended by the United States Sentencing Commission, on this particular guideline

20  chapter (§2G2.2) have been pervasive, far-reaching and operating to increase the

21  recommended Guideline sentence exponentially, often beyond the statutory maximum

22  sentence, even in basic non-aggravating cases involving offenders with no criminal history.[3]

23

24  _____

25  [3] This pervasive intervention appears to be motivated primarily by fear-mongering rather than a reasoned assessment of the effects of higher sentences on typical child-pornography offenders. Regardless, Congressional concern with the severity of sentences for child pornography-related offenses is better effectuated through

26  statutory changes to sentences rather than in the form of directives to the Sentencing Commission:

Page   20 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    In one of the most recent decisions on the issue, the Second Circuit recognized

2    that the child pornography Guideline (2G2.2) is "fundamentally different from most" due to

3    the fact that this Guideline is not based upon the empirical approach traditionally used by the

4    Sentencing Commission:

5

6        [S]entencing Guidelines are typically developed by the
         Sentencing Commission using an empirical approach based on
7        data about past sentencing practices. *See Rita*, 551 US at 349.
         However, the Commission did not use this empirical approach
8        in formulating the Guidelines for child pornography. Instead, at
         the direction of Congress, the Sentencing Commission has
9        amended the Guidelines under § 2G2.2 several times since
         their introduction in 1987, each time recommending harsher
10       penalties. *See* United States Sentencing Commission, *The
         History of the Child Pornography Guidelines*, Oct. 2009,
11       *available                                                    at*
         http://www.ussc.gov/general/20091030_History_Child_Pornog
12       raphy_Guidelines.pdf.

13       *United States v. Dorvee*, No. 09-0648-CR, ___ F.3d ___, 2010
         WL 3023799, *9 (2nd Cir., May 11, 2010, amended Aug. 4,
14       2010).

15   Other courts have come to similar conclusions, including the Northern District

16   of Iowa, which recognized that "[C]ongressional mandates such as these "*interfere with and*

17   *undermine the work of the Sentencing Commission.*"   *United States v. Beiermann*, 599 F

18   Supp 2d 1087, 1104 (ND Iowa, 2009)(emphasis supplied)(holding "that a sentence in strict

19   accordance with the advisory guideline for child pornography offenses would be at odds with

20   the "parsimony provision" of the federal sentencing statute, 18 USC 3553(a)").   Specifically,

21

22
_____

23       As to any argument that the guideline reflects Congressional intent to punish child sex offenses
         harshly, a guideline is not a statute. The statute here provides a broad range of punishment for this
24       crime, and if Congress does not want the courts to try and sentence individual defendants throughout
         that range based on the facts and circumstances of each case, then Congress should amend the statute,
25       rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of
         the Sentencing Commission.

26   *United States v. Shipley,* 560 F Supp 2d 739, 744 (SD Iowa, June 19, 2008), *quoted in Beiermann,* 599 F Supp
     2d at 1104-1105.

Page   21 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

the *Beiermann* court stated, "I find that U.S.S.G. § 2G2.2 should be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case." *Id.* at 1117.

This particular disagreement is not simply a manifestation of the fundamental ability of the courts to disagree with the guidelines, but a special recognition that the sentencing court can disagree with the guidelines and sentence below the child pornography Guidelines where the specific guideline (2G2.2) is not a product of the traditional empirical approach taken by the United States Sentencing Guideline Commission. *United States v. Phinney*, 599 F Supp 2d 1037, 1039 (ED Wis 2009), *quoting United States v. Gellatly*, No. 08-CR-50, 2009 WL 35166, at *4 (D Neb Jan. 5, 2009). *See also, e.g. Beiermann, supra* at 1104, *United States v. Baird*, 580 F Supp 2d 889, *United States v. Noe*, 2009 WL 3836707 (D Neb Nov. 13, 2009); *United States v. Grober,* 595 F Supp 2d 382 (D NJ 2008); *United States v. Huffstatler,* 571 F 3d 620, 624 (7th Cir 2009) (noting that district courts may "have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines").

All of these courts come to the same basic fundamental conclusion:

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives .' " *See, e.g., Kimbrough*, 552 US at _____ , 128 S Ct at 574 ( *quoting Rita* 551 US at 350 *see also Gall*, 552 US at _____ 128 SCT at 594 n 2 (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence. *See Kimbrough*, 552 US at _____ , 128 S Ct at 574-575. In such cases, it is "not an abuse of

Page    22 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough*, 552 U.S. at ---, 128 S.Ct. at 575.

*United States v. Noe*, 2009 WL 3836707 at 4 (D Neb, November 13, 2009); *See Phinney, supra* at 1039; *United States v. Hanson,* 561 F.Supp.2d 1004 (ED Wisc 2008) (the court recognized that between  the dramatic increase in the mean sentences in child pornography cases between 1994 and 2007 "was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing.  Rather, it was the result of arbitrary increases by Congress slipped into other bills, often with little or not debate."); *United States v. Baird*  580 F Supp 2d 889 (D Neb 2008) (granting substantially below guideline sentence in child-porn case in part because "the Guidelines for child exploitation offenses, like the drug-trafficking Guidelines, were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives).

The Sentencing Commission's reports elaborate on how the Commission has departed from past practices in setting offense levels for child abuse crimes and sexual offenses, both for policy reasons and because Congress had enacted mandatory minimum sentences.  *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, at 72-73 (Nov. 2004), *available at* http://www.ussc.gov/15_year/15year.htm ("The frequent mandatory minimum legislation and specific directives to the [Sentencing] Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."); United States Sentencing Commission, *The History of the Child Pornography Guidelines*  44-48  (October  2009),  *available  at* http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf.

Page  23 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1  (discussing Commission's approach to setting a base offense level that corresponds to a

2  mandatory minimum sentence).

3          In *United States v. McElheney*, 630 F Supp 2d 886, 892-93 (ED Tenn

4  2009)(citations and quotation omitted), Chief Judge Collier recounts the history and effect of

5  Congressional intervention in this Guideline:

6

7          The Sentencing Commission drafted the Guidelines for child
           pornography without congressional input from 1987 to 1990.
8          At that time, the base offense level was 13, with enhancements
           for the age of the minor and value of the images distributed. In
9          1990, Congress criminalized possession of child pornography
           and directed the Sentencing Commission to amend the
10         Guidelines to increase penalties for child pornography
           defendants. The Sentencing Commission proposed adding a
11         new section to address possession of child pornography, which
           had a base offense level of 10, and adding an enhancement for
12         sadistic content for offenses involving selling or possessing
           with the intent to sell child pornography. The Senate, however,
13         interpreted the proposal as an attempt to lower penalties and
           directed the Sentencing Commission to increase penalties for
14         child pornography defendants. As a result, the Commission
           grouped all offenses other than simple possession into the same
15         section, increased the base offense level, and added a new
           enhancement for a pattern of activity involving the sexual
16         abuse or exploitation of a minor. In 1995, Congress again
           directed the Sentencing Commission to raise the base offense
17         levels and to increase punishment for child pornography
           offenses involving a computer. Although the amendment
18         applied to all child pornography defendants, discussion in
           Congress was limited to child pornography producers and mass
19         distributors.

20

21         ***

22         Congress repeatedly intervened in the development of the
           Guidelines for child pornography in subsequent years,
23         mandating a two-level enhancement for use of a computer and
           broadening the definition of distribution of pornography. The
24         Feeney Amendment and the PROTECT Act *** directly
           amended the Guidelines for child pornography by adding
25         enhancements for the number of images possessed. In 2004,
           the Sentencing Commission reworked the Guidelines for child
26

Page    24 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

> pornography to reflect increased mandatory minimum penalties and reconcile the changes made by the PROTECT Act. The increased penalties directed by Congress were generally imposed with little or no debate.

*McElheney,* at 892-93 (citations and quotation omitted); *see also Phinney, supra* at 1041-43; *United States v. Strayer,* 2010 WL 2560466 (D Neb June 24, 2010)(departed downward from the range of 210-240 months to the mandatory minimum of 60 months based upon 18 USC 3553(a)).

The 2003 and 2004 amendments to the guidelines represented especially dramatic increases in sentences for the typical child pornography offenders, rather than the traditional approach of applying solely to the worst offenders: "in 2003, as part of the Feeney Amendment to the PROTECT Act, Congress added the 5 level enhancement for number of images. No research, study or rationale was provided for this huge increase." *United States v. Hanson,* 561 F Supp 2d 1004, 1010 (E D Wis 2008). At the same time, the PROTECT Act directly amended the Guideline governing possession of child pornography to include a four-level enhancement for "material that portrays sadistic or masochistic content," also without consulting the Commission or conducting any research into the necessity of applying this enhancement to simple possession. *See Protect Act,* Pub.L. 108-21, §401.

In 2004, in an effort to reconcile the provisions of the PROTECT Act, and Congressional directives, the Sentencing Commission made numerous changes to the Guideline, including raising the offense level for simple possession from 15 to 18. *See* Amendment 664, USSG App. C.

The *Dorvee* Court acknowledged this fact when it referred to information from Alan Vinegrad:

> Alan Vinegrad, the former United States Attorney for the Eastern District of New York, has noted that the recent changes effected by the PROTECT Act of 2003 evince a "blatant"

Page 25 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

disregard for the Commission and are "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress," as Congress:

> (i) adopted sentencing reforms without consulting the Commission, (ii) ignored the statutorily- prescribed process for creating guideline amendments, (iii) amended the Guidelines directly through legislation, (iv) required that sentencing data be furnished directly to Congress rather than to the Commission, (v) directed the Commission to reduce the frequency of downward departures regardless of the Commission's view of the necessity of such a measure, and (vi) prohibited the Commission from promulgating any new downward departure guidelines for the next two years.

*Dorvee* at *9 *quoting* Alan Vinegrad, The New Federal Sentencing Law, 15 Fed. Sent. R. 310, 315 (June 2003).

Worse, virtually all of these modifications to the Guideline were passed with little or no debate or consideration in Congress: the dramatic increase in child pornography sentences "was the result of arbitrary increases by Congress slipped into other bills, often with little or no debate, resulting in direct amendments to the guidelines. These amendments destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters." *Hanson*, 561 F Supp 2d at 1009. Although the Commission sought to persuade Congress not to make such changes, it was not successful. *Id.*

In *Strayer*, the court recognized, as many other courts have, that a) the child pornography guidelines "are driven by Congressional directive and are not grounded in any scientific, statistical or empirical method, b) 2G2.2 does not "reflect the sort of empirical data, national experience and independent expertise that characterize the Sentencing Commission's institutional role", c) the flaws in the process are such that 2G2.2 "need not be

Page   26 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

accorded a high degree of deference", d) 2G2.2 "illogically skews sentences for the 'average'

defendant to upper end of the range, e) 2G2.2 provides "little distinction between a low-level

distributor and a high level distributor", f) the almost universal application "of numerous and

severe enhancements results in a low-end Guidelines sentence close to the statutory

maximum", and g) the internet is the typical means for obtaining images and therefore, the

"use of a computer and number of images lack value as a reliable proxy for culpability and

are a poor gauge of relative levels of fault between offenders" h) "in the court's experience,

virtually all offenders fall into that (600+ images) category, with most possessing thousands

of images". *Strayer*, 2010 WL 2560466 at 12-13.

In *United States v. Hanson*, 561 F Supp 2d 1004 (ED Wisc 2008) the court

recognized that between  the dramatic increase in the mean sentences in child pornography

cases between 1994 and 2007 "was not the result of the empirical approach often used by the

Commission, designed to be an expert body on sentencing.   Rather, it was the result of

arbitrary increases by Congress slipped into other bills, often with little or not debate."; *U.S.

v. Baird*,  580 F Supp 2d 889 (D Neb  2008)(granting substantially below guideline sentence

in child-porn case in part because "the Guidelines for child exploitation offenses, like the

drug-trafficking Guidelines, were not developed under the empirical approach, but were

promulgated, for the most part, in response to statutory directives.);  *U.S. v. Jaber*, 362 F

Supp 2d 365 (D Mass 2005)("the Commission simply took the average national sentences for

a given offense, and then increased them, without explanation, much less scientific studies").

By way of comparison, were Mr. Probstfeld to be sentenced based on the

Commission's initial approach to simple possession of child pornography, which *was* based

on study, his guideline range in this case would have been 6-12 months absent any other

27 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   reason for departure other than acceptance of responsibility: base offense level of 10, plus 2

2   level enhancement due to the young age of the children and minus 2 for acceptance of

3   responsibility for a final level of 10.  In criminal history category I, level 10 produces a range

4   of 6-12 months.  *See* USSG §2G2.4 (1991)[4]; Amendment 372, USSG App. C.; *Phinney,* 599

5   F Supp 2d at 1043 (deciding defendant should be sentenced based on the Commission's

6   initial approach).[5]

7

8           As a result of the history of the statute and *Kimbrough's* recognition that the

9   Sentencing Commission's recommendation as embodied in the Guidelines does not represent

10  a rough approximation of the sentence §3553(a) factors, district courts across the country

11  have discounted or rejected USSG § 2G2.2.[6]    As shown, some courts have even

12  categorically rejected the application of USSG § 2G2.2 because USSG § 2G2.2 itself is not

13  based on empirical evidence, and it "is not a reliable indicator of the Sentencing

14  Commission's perspective on a fair sentence."   *Beiermann,* 599 F Supp 2d at 1104

15  (categorically rejecting § 2G2.2); *see Spears v. United States,*  555 US ____ , 129 S Ct 840,

16  842-43 (a guideline may be rejected on categorical, policy grounds, even in a "mine-run"

17

18

19  _____

20  [4]  At the inception of the Guidelines, simple possession of child pornography was **_not_** even a crime and the now-applicable Guideline provision, §2G2,2, only applied to "transporting, receiving, or trafficking" offenses. *See* USSG §2G2.2 (1987). The acts of possession and possession with intent to distribute child pornography criminalized as part of the Crime Control Act of 1990. *See Pub. L.* 101-647, §323 (b), 104 Stat 4789, 4818-19 (1990); *United States v. Vig,* 167 F 3d 443, 449 (8th Cir 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography). Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children ... so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." *Pub. L.* 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990).

24  [5] After including the five-level recommended downward variance in exchange for Mr. Probstfeld's agreement to participate in psychosexual assessments and, having both be positive, his offense level would be 7, which produces a range of 0-6 months.

26  [6]  Circuit courts have also recognized that this Guideline is deeply flawed. See, e.g. *United States v. Dorvee,* No. 09-0648-CR, ___ F 3d ___, 2010 WL 3023799 (2nd Cir, May 11, 2010) (amended Aug. 4, 2010); *United States v. Huffstatler,* 571 F 3d 620, 623 (7th Cir 2009).

Page    28 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

1   case, and not simply based on an individualized determination that it yields an excessive

2   sentence in a particular case).

3           As a result of the Congressionally mandated changes to the § 2G2.2 guideline,

4   application of the sentencing enhancements in § 2G2.2(b) "routinely result in Guidelines

5   projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Dorvee*,

6   __F 3d at __, 2010 WL 3023799 at *10.  Further, it is clear that enhancements, instead of

7   being case specific and outside of the BOL are, in fact, applicable to almost every case which

8

9   has the practical effect of assimilating the enhancement factors into the BOL without

10  following the methodology traditionally used by the USSC in setting base offense levels for

11  specific criminal acts.

12          Recently, another court based its decision, in part, on *Dorvee* and emphasized

13  the existence of this phenomenon when it stated that:

14
15          For instance, three of the five enhancements that applied to
            Tutty here also apply to the overwhelming majority of
16          offenders: 94.8% of offenders received an enhancement for
            images of victims under the age of twelve; 97.2% of offenders
17          received an enhancement for use of a computer; and 96.6% of
            offenders received an enhancement based on the number of
18          images possessed. *See* United States Sentencing Commission,
            *Use of Guidelines and Specific Offense Characteristics for*
19          *Fiscal    Year    2009,    available    at    http://*
            www.ussc.gov/gl_freq/09_glinexgline.pdf (last visited Jul. 6,
20          2010). The computer enhancement, for instance, has the flavor
            of impermissible "double counting"-because it effectively
21          "increase[s] a defendant's sentence to reflect the kind of harm
            that has already been fully accounted for" by the base offense
22          level or other enhancements. *United States v. Volpe,* 224 F 3d
            72, 76 (2nd Cir 2000) *Id.,* citing United States Sentencing
23          Commission, *Use of Guidelines and Specific Offense*
            *Characteristics for Fiscal Year 2009,* available at
24          http://www.ussc.gov/gl_ freq/09_glinexgline.pdf.

25

26

Page   29 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

*United States v. Tutty,* __ F3d ___ , 2010 WL 2794601 (2nd Cir July 16, 2010)(court held failure to recognize ability to reduce a child pornography sentence was plain error).[7]

As a result, application of the Guidelines leads to extremely high sentences that fail to distinguish between the least and worst offenders.  In fact, a typical offender with no criminal history will usually end up with a Guideline range at or beyond the statutory maximums.  Another court recognized this skewing of sentences for child pornography when it stated that:

> The Guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.

> *Howard,* 2010 WL 749782 at *9; *see also Dorvee,* --- F.3d ---, 2010 WL 3023799 *10 ("The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases."); *Ontiveros,* 2008 WL 2937539 at *8 (noting that "now less than 5% of the defendants affected by the changes [to §2G2.2] fall within the classes of mass producers, repeat abusers, and mass distributors that Congress intended to target for the lengthiest sentences.")

As a result of the prevalence of the enhancement factors being applied in such a pervasive manner, at least one court has noted that the "purportedly aggravating factors are actually inherent in the possession of child pornography.....and operate exponentially" to radically increase a defendant's sentence exposure.  *Grober, supra* at 397.  This is clear in the instant case.  Application of these enhancements adds 13 levels, bringing Mr. Probstfeld's

---

[7] In the United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* report, *supra,* the Commission also found 73.4% of all cases involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)).

Page   30 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   suggested Guidelines level from 18 to 31, which results in a sentencing range of 108-135

2   months, a fourfold increase from the recommended range of 27-33 months at a level 18.

3            According to the legislative history, the increased sentences in this Guideline

4   were needed to properly punish those who sexually exploited children and profited from it.

5   *Phinney, supra* at 1042.  Yet, the application of these enhancements means that a person who

6   ***possessed*** images depicting minors engaging in sexual acts is subject to a higher sentence

7   that someone who actually committed a sex act with a minor.  *Dorvee* at \*10.[8]  These

8   enhancements have become so common in the majority of cases that they have now ceased to

9   be an "enhancement" at all, but instead constitute a core part of the offense.  As a result, the

10   least culpable child pornography defendant will be sentenced in ranges that should be

11   reserved for the most serious offenders.  As a result, district courts have been imposing

12   sentences far below the Guidelines range.  *See* United States Sentencing Commission, 2009

13   Sourcebook of Federal Sentencing Statistics, tbl. 28.

14            Moreover, the specific enhancements have the practical effect, due to their

15   presence in almost every case, to artificially inflate the stated base offense level to a level

16   that reflects the base offense level plus the enhancements.

---

[8] The court also noted:

> A defendant convicted under 18 USC § 2252A(a)(5) of possessing on his computer two nonviolent videos of seventeen-year-olds engaging in consensual sexual conduct qualifies for a base offense level of 18 under §2G2.2(a)(1), a two-level enhancement for use of a computer under 2G2.2(b)(6), and a three-level enhancement for number of images under §2G2.2(b)(7)(B). Even with no criminal history, this individual's total offense level of 23 would result in a Guidelines sentence of 46 to 57 months. This is the same Guidelines sentence as that for an individual with prior criminal convictions placing him in a criminal history category of II, who has been convicted of an aggravated assault with a firearm that resulted in bodily injury.

*Id* at \*11.

Page   31 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    For example, Mr. Probstfeld is subject to enhancement for use of a computer

2    and for the number and type of images where these two enhancements apply in virtually

3    every case. *Phinney, supra* at 1042.  As previously stated, in 2009, the enhancements for use

4    of a computer applied in 97.2% of cases, 63.1% involved more than 600 images.   United

5    States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for*

6    *Fiscal Year 2009,* available at http://www.ussc.gov/gl_freq/09_glinexgline.pdf.    District

7    courts have recognized that the Internet is now the "typical means of obtaining child

8    pornography, and Internet child pornography cases are essentially the only kind of child

9    pornography crime prosecuted in federal court." *Howard, supra* at *10, *Noe supra* at *8.  As

10   a result, the "enhancements for use of a computer and number of images lack value as a

11   reliable proxy for culpability and are a poor gauge of relative levels of fault between

12   offenders." *Howard, supra* at *10; *Noe, supra* at *8.   Since it is necessary to use a computer

13   to access the Internet, this enhancement applies broadly and is meaningless in distinguishing

14   between offenders, and applies to even the least culpable of offenders sentenced under this

15   Guideline.

16       Since the mere use of a computer to access pornography is so common, it is

17   not an indicator of participation in a larger-scale distribution scheme.  By the same token,

18   "[t]he number of images is meaningless as an indicator of a defendant's position in a

19   distribution hierarchy," because large numbers of images can be accessed and obtained with

20   "unfortunate ease."  *Noe* *8, *Howard* at 10.  The court concluded that a five-level increase

21   overstates the connection, if any, between a defendant's relative guilt and number of images.

22   *Id.*

Page   32 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    These enhancements were added *__over the objections of the Sentencing__*

2  *__Commission__* and do not represent an empirical approach to the Guidelines.  Specifically, the

3  Sentencing Commission expressed concern about the computer enhancement in a 1996

4  report, because it fails to make relevant distinctions between offenders:

> on-line pornography comes from the same pool of images
> found in print pornography, and that different types of
> computer use have different effects on the two primary harms
> caused by the crime-(1) the degree to which the computer
> facilitated widespread distribution, and (2) the degree to which
> it increased the likelihood that children would be exposed. In
> other words, some computer uses are more harmful than others,
> yet the enhancement provided no distinction.

*Phinney, supra* at 042, (citations omitted).

> The *Hanson* Court also criticized the "use of computer"
> enhancement. Specifically, the Commission has:
> noted that *__the enhancement for use of a computer does not__*
> *__make much sense because online pornography comes from__*
> *__the same pool of images found in specialty magazines or__*
> *__adult bookstores. Further, to the extent that use of a__*
> *__computer may aggravate an offense, it does not do so in every__*
> *__case.__* For example, someone who e-mails images to another
> (like the instant defendant) is not as culpable as someone who
> sets up a website to distribute child pornography to a large
> number of subscribers. If the defendant did not use the
> computer to widely disseminate the images, use them to entice
> a child, or show them to a child, the purpose for the
> enhancement is not served. *__Yet it applies in virtually all__*
> *__cases.__*"

*Hanson,  supra*  at  1009-10  (citation  omitted)(emphasis
supplied).

22    The 5-level enhancement for number of images, as discussed above, was

23  added to the Guideline by Congress in the Feeney Amendment to the PROTECT Act.  "No

24  research, study or rationale was provided for this huge increase." *Id* at 1010.  This was "the

Page  33 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

The Honorable Ronald B. Leighton

1  first instance since the inception of the Guidelines where Congress directly amended the

2  Guidelines Manual." *Dorvee, supra* at *9.

3           Finally, the enhancement for images depicting sadomasochistic activity

4  applies to 73.4% of the defendants sentenced under this Guideline, while the enhancement

5  for images depicting prepubescent minors applies in 94.8% of the cases.  Such enhancements

6  apply "whether or not a defendant specifically intends to possess such material," and are

7  therefore "another inadequate measure of culpability."  *Noe, supra* *8.  Therefore, the same

8  principles that apply to other enhancements are equally applicable to these enhancements

9  because they are so prevalent that they have become *de facto* and *de jure* part and parcel of

10 the base offense level.

11          In this case, the defense asserts that a sentence of probation is justified under

12 numerous factors in the cases and argument above.  It is important to note that probation for

13 the offense for which Mr. Probstfeld has pled guilty would not be unreasonable.  *United*

14 *States v. Autery*, 555 F 3d 864 (9th Cir 2009) (probation sentence held to not be unreasonable

15 under facts of case and guidelines); *United States v. Stall*, 581 F 3d 276 (6th Cir  2009)(Not

16 unreasonable in child pornography case to depart from guidelines range of 57-65 months to

17 sentence of 1 day in jail, 10 years supervised release, and one year house arrest in part

18 because of strong testimony by expert as to defendant's mental state, ongoing therapy  and

19 unlikely chance of recidivism); *United States v. Duhon*,  541 F 3d 391 (5th Cir 2008).

20          The defense objects to several of the conditions of supervision contained in

21 the Recommendation.

22 /////

23 /////

Page  34 – DEFENDANT'S SENTENCING MEMORANDUM
      (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    First, the defense objects to condition #3 as there is no evidence that Mr.

2    Probstfeld has a drug or alcohol issue and there is similarly no evidence that he used any

3    intoxicant in any form in relation to the crime of conviction.

4

5    Second, the defense objects to conditions #8 and #9. Mr. Probstfeld has

6    previously submitted to two psycho-sexual evaluations and submitted those reports to the

7    United States Probation Office and contends that there is no justification for requiring a third

8    evaluation. In addition, Mr. Probstfeld is, and has been, in treatment with a Washington State

9    Certified sex offender treatment specialist, Dr. Tom Brewer, for over a year and the defense

10   contends that the condition of requiring treatment should allow for continuing treatment with

11   Dr. Brewer. Based upon the evaluations provided, the type of treatment set forth in

12   condition 9 is not warranted.

13

14   Third, the defense objects to the breadth of the language in Condition #11

15   regarding the language "where minors are known to frequent" and the language in Condition

16   #12 regarding "indirect" contact. The language in both conditions could effectively preclude

17   Mr. Probstfeld from going to grocery stores, restaurants, shopping malls, movie theaters or

18   even walk through a downtown park. The defense suggests for Condition #11 that the

19   language be reflective of the language in condition #13 (i.e., places that primarily cater to, and

20   are primarily used by, minors.

21

22   Fourth, the defense objects to condition #17 (the defense notes that the

23   Recommendation skips from condition 13 to condition 16 in numbering so this reference is to

24   the condition that is numbered 17) on the grounds that this is not a financial crime and there is

25   no indication that Mr. Probstfeld has ever avoided his tax filing responsibilities and, therefore,

26

Page    35 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1   this condition is totally unrelated to the crime of conviction or the purposes of supervision

2   for Mr. Probstfeld.

3          The Recommendation does not make a formal recommendation regarding

4   restitution. However, the *Draft* PSR (paragraphs 22-23) states that restitution is appropriate

5   under the Mandatory Restitution Act. The defense filed an extensive objection to that

6   determination that cited cases from around the country that had rejected restitution in similar

7   cases. The *Final* PSR does not include the objection letter, but rejects the legal position taken

8   without analysis.

9          However, since the filing of that objection letter, Mr. Probstfeld initiated

10  settlement discussions regarding an appropriate and fair amount of restitution. As of the

11  filing of this document, Mr. Probstfeld, the Assistant United States Attorney and the two

12  attorneys for the two victims seeking restitution have agreed on a settlement amount that all

13  parties believe is appropriate and fair. If the court is inclined to endorse the stipulated

14  agreement of the parties, then at the time of the sentencing, Mr. Probstfeld will waive any

15  legal challenges to the imposition of restitution and provide the agreed upon settlement

16  amounts in full.

17

18                                 CONCLUSION

19          Douglas Probstfeld is 64 years of age, served his country in the armed forces,

20  and has no prior criminal record. He has supported and raised two fine sons, and is the

21  primary support for his 92-year-old mother. By any objective measure he is a good man.

22  While the government is recommending an "average sentence" of 24 months, a unique array of

23

24

25

26

Page   36 – DEFENDANT'S SENTENCING MEMORANDUM
       (Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

mitigating circumstances support an exceptional sentence in this case. Those include the fact that Mr. Probstfeld:

1.   Has no prior criminal record;

2.   Never disseminated or shared the offensive images;

3.   Voluntarily engaged in counseling before he was even charged;

4.   Has achieved significant progress in counseling for more than a year demonstrating substantial post-offense rehabilitation;

5.   Submitted to polygraph testing confirming that he has no history of sexual contact with minors;

6.   Obtained two psychosexual evaluations confirming that he has normal sexual interests and is extremely unlikely to re-offend;

7.   Has accepted full responsibility for the offense;

8.   Has exhibited exceptional good behavior on pre-trial release, which also supports his suitability as a probationary candidate;

9.   Has agreed to restitution; and

10.   Has been, and remains, the primary care-provider for his 92-year-old mother, who expressed to the Pre-sentence writer: "Without him to take care of me, I would have to go into a nursing home."

Given the constellation of mitigating circumstances in this case, the PSI recommendation of 24 months is excessive, and inconsistent with the Congressional mandate that the Court "shall impose a sentence sufficient, *but not greater than necessary*, to comply with (the purposes of sentencing)"(emphasis supplied). 18 USC § 3553(a); *Kimbrough v.*

Page    37 – DEFENDANT'S SENTENCING MEMORANDUM
(Douglas L. Probstfeld / Case No CR 09-5887 RBL)

DAVID T. McDONALD, P.C.
Attorney at Law
510 S.W. Third Avenue, Suite #400
Portland, Oregon 97204
(503) 226-0188

The Honorable Ronald B. Leighton

1    *United States*, supra. Accordingly, it is respectfully submitted that a probationary sentence,

2    with electronic home confinement, be imposed by the Court in this case.

3                          DATED this 2nd day of September 2010.

4
                                        s/ Steven W. Thayer for David T. McDonald
5                                       David T. McDonald, WSBA #18446
                                        510 SW 3RD Avenue, Suite 400
6                                       Portland, OR  97204
                                        (503) 226-0188
7                                       Of Attorneys for Douglas L. Probstfeld

8
                                        s/ Steven W. Thayer
9                                       Steven W. Thayer, WSBA #7449
                                        1111 Main St., Suite 660
10                                      Vancouver, WA  98660
                                        (360-694-8290
11                                      Of Attorneys for Douglas L. Probstfeld

12

13                          CERTIFICATE OF SERVICE

14

15          I hereby certify that on September 2, 2010, I electronically filed the foregoing
     DEFENDANT'S SENTENCING MEMORANDUM and supporting attachments with the
16   Clerk of the Court using the CM-ECF system, which will send notification of such filing to
     the attorney(s) of record for the plaintiff.   I hereby certify that I have served any attorney(s)
17   of record that are not CM-ECF participants via email.

18
                                        s/ Connie Halperin
19                                      Connie Halperin
                                        Legal Assistant to David T. McDonald, WSBA #18446
20                                      510 SW 3RD Avenue, Suite 400
                                        Portland, OR  97204
21                                      (503) 226-0188
                                        (503) 226-1136 (f)
22                                      connie@mcdonaldpc.com

23

24

25

26

Page    38 – DEFENDANT'S SENTENCING MEMORANDUM
        (Douglas L. Probstfeld / Case No CR 09-5887 RBL)